[871 NYS2d 246]

In the Matter of BARRY L. GOLDSTEIN, an Attorney, Respondent.
GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT,
Petitioner.

Second Department, December 30, 2008

## APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Faith Lorenzo* of counsel), for petitioner.

*Barry L. Goldstein*, Yonkers, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Ninth Judicial District (hereinafter Grievance Committee) served the respondent with a verified petition and a supplemental petition alleging, all together, 29 charges of professional misconduct. After a preliminary conference and a hearing, Special Referee Krane sustained charges 2, 3, 4, 5, 6, 8, 9, 15, 16, 17, 19, 21, 22, 26, 27, 28 and 29, sustained in part and dismissed in part charges 10, 11, 12 and 14, and dismissed in their entirety charges 1, 7, 13, 18, 20, 23, 24 and 25. The Grievance Committee now moves to confirm the Special Referee's report insofar as it sustained the various charges, to disaffirm the report insofar as it dismissed other charges, in whole or in part, and to impose such discipline as the Court deems just and proper. The respondent submitted an affirmation in which he opposes confirmation of the Special Referee's report, seeks dismissal of the charges sustained, and opposes the imposition of any discipline.

Charges 1 through 9 and 25 through 29 relate to the respondent's handling of client and third-party funds in his escrow account. The remaining charges in the petition, charges 10 through 24, relate to the respondent's conduct in the so-called *Shockome* litigation (*see Matter of Shockome v Shockome*, 30 AD3d 528 [2006]), a domestic relations and child custody matter before the Honorable Damian J. Amodeo in the Family Court, as well as the Supreme Court, Dutchess County.

## Charges 1 through 9 and 25 through 29

The respondent's primary legal practice was in representing tenants for Cluster Housing Resource Center (hereinafter Cluster), a not-for-profit housing resource center, and North Yonkers Preservation and Development. In his role as counsel for Cluster, the respondent deposited client funds into his master escrow account at JPMorgan Chase or into a client subaccount for Cluster which covered deposits for all tenants on whose behalf Cluster was working.

Charge 1 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). The respondent maintained a master account at JPMorgan Chase and a subaccount for Cluster. With respect to the subaccount for Cluster, between January 27, 2003 and July 29, 2003, the respondent made various deposits and disbursements or transfers of funds relating to a landlord-tenant matter known as Cluster-14 Mulberry Street. During this time period, the respondent also had on deposit in the subaccount for Cluster funds relating to other landlord-tenant matters. When making his disbursements or transfers of funds on behalf of Cluster-14 Mulberry Street, the respondent failed to ensure that he had adequate funds on deposit for Cluster-14 Mulberry Street, such that on various dates negative balances resulted.

Charge 2 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), in connection with funds he deposited into the Cluster subaccount relating to a landlord-tenant matter known as 98 School Street. He disbursed or transferred funds relating to 98 School Street without ensuring that he had adequate funds on deposit for that entity. Specifically, on March 19, 2003, he disbursed or transferred $2,310 to 98 School Street from his Cluster subaccount, when he had on deposit only $1,540 for 98 School Street. On March 27, 2003, he deposited $770 relating to 98 School Street into his Cluster subaccount.

Charge 3 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow ac-

count in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), in connection with funds he deposited into the Cluster subaccount relating to a landlord-tenant matter known as Bruce. He disbursed or transferred funds relating to Bruce without ensuring that he had adequate funds on deposit for that entity. Specifically, between June 18, 2003 and June 20, 2003, he disbursed or transferred $1,147 relating to Bruce from his Cluster subaccount when he did not have sufficient funds on deposit relating to Bruce in his Cluster subaccount.

Charge 4 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), in connection with funds he deposited into the Cluster subaccount relating to a landlord-tenant matter known as Collado. He disbursed or transferred funds relating to Collado without ensuring that he had adequate funds on deposit for that entity. Specifically, on or about August 11, 2004, he disbursed or transferred $2,265.70 relating to Collado from his Cluster subaccount when he had at the time only $1,133 on deposit for Collado. On or about August 23, 2004, he deposited $1,133 relating to Collado into his Cluster subaccount.

Charge 5 alleges that the respondent converted client funds in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by failing to disburse the interest earned on the Cluster subaccount. Between December 31, 2003 and December 23, 2004, approximately $167.16 in interest was earned on the client funds on deposit. The respondent testified that the interest accumulated to approximately $511.

Charge 6 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), in connection with funds he deposited into his master/main escrow account relating to a landlord-tenant matter known as Locust. He disbursed funds relating to Locust without ensuring that he had adequate funds on deposit for Cluster-Locust in his master escrow account. Specifically, on or about December 26, 2003, he disbursed $6,832.90 relating to Locust from his

master escrow account when he had at the time only $4,832.90 on deposit for Locust. At the time, the respondent had approximately $1,341.72 relating to Locust on deposit in his Cluster subaccount.

Charge 7 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), in connection with funds he deposited into his master/main escrow account relating to a landlord-tenant matter known as 244 New Main Street. He disbursed or transferred funds relating to 244 New Main Street without ensuring that he had adequate funds on deposit for that entity in his master escrow account. Specifically, on or about April 30, 2004, he disbursed or transferred $1,850 relating to 244 New Main Street from his master escrow account when he had at the time only $1,200 on deposit for that entity. At the time, the respondent had approximately $1,850 relating to 244 New Main Street on deposit in his Cluster subaccount.

Charge 8 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), in connection with funds he deposited into his master escrow account relating to a landlord-tenant matter known as 54 Van Cortlandt Park. He disbursed or transferred funds relating to 54 Van Cortlandt Park without ensuring that he had adequate funds on deposit for that entity in his master escrow account. Specifically, on or about March 27, 2003, he disbursed or transferred $2,363 relating to 54 Van Cortlandt Park from his master escrow account when he did not have any funds on deposit for that entity in that account. On that same date, the respondent had $2,363.46 relating to 54 Van Cortlandt Park on deposit in his Cluster subaccount.

Charge 9 alleges the respondent failed to obtain escrow checks bearing the title "Attorney Escrow Account" or "Attorney Special Account" or "Attorney Trust Account," in violation of Code of Professional Responsibility DR 9-102 (b) (2) (22 NYCRR 1200.46 [b] [2]), in connection with the respondent's main escrow account or his Cluster subaccount.

Charge 25 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by convert-

ing funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). On or about April 23, 2004, the respondent deposited approximately $926 relating to a matter known as Garcia-73 Hamilton Avenue into his master escrow account. On or about May 4, 2004, he disbursed $1,389 from his master escrow account which related to that entity. However, the respondent failed to ensure that he had adequate funds available on deposit in his master account relating to Garcia-73 Hamilton Avenue before making the disbursement.

Charge 26 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by converting funds and/or failing to maintain a duly constituted escrow account in breach of his fiduciary duty, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). Between June 17, 2003 and September 11, 2003, the respondent made various deposits of funds into his Cluster subaccount relating to tenants of 249 McLean. On September 11, 2003, the respondent transferred $927 of funds related to that entity from the Cluster subaccount to his master account without ensuring he had adequate funds on deposit in his Cluster subaccount related to 249 McLean.

Charge 27 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by failing to comply with a lawful request of the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). The Grievance Committee made numerous requests for the respondent to account for the financial transactions in his master attorney escrow account and Cluster subaccount. The Grievance Committee prepared a summary report of the transactions in the respondent's escrow account and directed the respondent to review it for accuracy and advise it of any errors. The respondent failed to comply with this request.

Charge 28 alleges that the respondent failed to maintain records for his attorney escrow account as required by Code of Professional Responsibility DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]).

Charge 29 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law by failing to account to the Grievance Committee as to the source of funds deposited, the purpose of the funds disbursed, and the names of

all persons for whom the funds were held, for one or more of the following transactions in his attorney escrow account, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]):

a. $370 on deposit in his master account as of November 27, 2002;

b. $558 transferred from his Cluster subaccount into his master account on February 10, 2003;

c. $548 disbursed from his master account by check payable to Yonkers City Court;

d. $1,421.35 transferred from his Cluster subaccount into his master account on April 10, 2003;

e. $310 transferred from his Cluster subaccount into his master account on July 2, 2003;

f. $558 disbursed from his master account by check No. 1387 to Felipo Milio;

g. $132 transferred from his Cluster subaccount into his master account on May 25, 2004;

h. $84 cash deposit into his master account on October 5, 2004;

i. $2,775 transferred from his Cluster subaccount into his master account on December 14, 2004; and

j. $1,050 transferred from his Cluster subaccount into his master account on August 23, 2004.

### Charges 10 through 24

Charges 10 through 24 relate to the respondent's statements and conduct in the *Shockome* litigation before Judge Amodeo. Although the mother initially obtained temporary custody of the children, Judge Amodeo determined, after a hearing, that joint custody was unworkable, and awarded the father sole custody and the mother supervised visitation, a determination which was affirmed by this Court on appeal (*see Matter of Shockome v Shockome*, 30 AD3d 528 [2006]).

Charge 10 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), by making dishonest, false, or misleading statements in an article regarding the *Shockome*

matter. The respondent represented Yevgenia Shockome, the mother in the child custody matter, and in a divorce action in the Supreme Court. The respondent wrote an article entitled, "A Call for Genia's Law by Barry L. Goldstein, Stop Family Violence," which was posted on a Web site for the Battered Mothers' Custody Conference as part of a campaign to free the respondent's client, who had been imprisoned after being held in contempt by Judge Amodeo. One or more of the following excerpts from that article were dishonest, false, or misleading:

> i. "Without an evidentiary hearing or any written explanation, Judge Amodeo took the children from the mother who has raised them and sent them to the abuser."

> ii. "Judge Amodeo got around this in his decision by constructing a bizarre conclusion that he, the Judge, had caused the mother's PTSD."

> iii. "At one point it was discovered that the court had erased two of the transcripts[,] further delaying the appeal."

> iv. "The decision demanded that the mother stop therapy with her present therapist and instead use someone selected by the court."

> v. "I had to make a motion to withdraw from the case in front of Judge Amodeo for medical reasons . . . The law requires that when a party loses an attorney for medical reasons, that she is entitled to at least a 30-day stay to obtain another attorney. Instead, Amodeo continued to make her come to court unrepresented, to face more abuse. After the 30 days has passed (with no stay) he decided that she had enough time to find an attorney."

> vi. "The police were called and they found that the supervisor had attacked the mother and child."

> viii. "Judge Amodeo called numerous conferences to attack and berate the mother for interfering with the phone calls and the father's relationship with the children."

Charge 11 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by making the statements listed in charge 10.

Charge 12 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]). On behalf of his client, he prepared and filed with this Court a petition for writ of habeas corpus and a petition in a proceeding pursuant to CPLR article 78. These materials contained sworn statements which were dishonest, false, or misleading.

Charge 13 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]). On behalf of his client, the respondent prepared and filed an affirmation dated April 10, 2006 with the United States District Court in the Southern District of New York, in a proceeding entitled *Matter of Shockome v County of Dutchess*, in which he wrongfully accused Judge Amodeo of "initially refusing to provide" a contempt order and having "delayed presenting an order."

Charge 14 alleges that the respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by making the statements referred to in charges 12 and 13.

Charge 15 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]). On August 31, 2004, the respondent appeared before Judge Amodeo on behalf of his client and represented to the court that he had just seen a videotape recording which reflected that the court-appointed supervisor had been sleeping during a visit for approximately 15 or 20 minutes. Despite a directive by the court to produce the videotape for the court's review, the respondent did not produce the videotape and claimed it was lost. At one court appearance, the respondent indicated that the videotape was in his car. When questioned by the court regarding the whereabouts of the videotape, the respondent denied ever having the videotape in his car or possession. The respondent's client, when questioned, also advised the court that the videotape was lost. The respondent's client ultimately produced the videotape, but not until the court made findings that the respondent and his client deliberately attempted to prevent the court from having access to an important piece of evidence and had defied a clear mandate of the court.

After review of the videotape, the court stated that "anyone looking at that video will see that there is nothing on that video which suggests that [the supervisor] was asleep for 20 minutes." The court stated that the most important part of the videotape was that it showed that the mother made attempts throughout the visit to have the children say things, which the mother thought would be helpful to her case.

Charge 16 alleges that the respondent engaged in conduct prejudicial to the administration of justice and/or conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and (7) (22 NYCRR 1200.3 [a] [5], [7]), by his conduct described in charge 15.

Charge 17 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by failing to abide by one or more of the court's directives regarding the use of the term "abuser" when referring to the father. By decision and order dated June 6, 2003, the court admonished the respondent "once again" to refrain from referring to the father as "the abuser" in submissions to the court, as there had been no judicial finding in that regard. In various letters to the court, the respondent continued to refer to the father as "the abuser." When reminded of the court's clear and unequivocal direction in the order dated June 6, 2003, the respondent repeatedly referred to the father as the "alleged abuser." In a decision and order dated May 10, 2004, the court stated that the respondent "prior to any finding, labeled the father as 'abuser' and repeated the use of that description as often as possible, notwithstanding the Court's repeated directions and admonitions not to do so."

Charge 18 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code or Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by failing to comply with a directive of the court to produce certain discovery. On September 20, 2004, the court ordered the respondent to comply with discovery requests within two weeks. On October 24, 2004, the court noted that the respondent's motion to be relieved as counsel was being made on the same date discovery was due, that no request for an extension of time had been made, and that Ms. Shockome was already twice in default in providing discovery. By decision dated February 22, 2005, the court found that both Ms. Shockome and

the respondent disobeyed the court's order to comply with disclosure.

Charge 19 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by failing to comply with a directive of the court regarding use of the parties' last name. On August 21, 2003, the court issued a gag order and directed that the parties' last names not be used in order to protect the children. Contrary to the court's directive, respondent revealed the last names of the parties in his article "A Call for Genia's Law" dated May 7, 2005, which was posted on the internet.

Charge 20 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by failing to comply with a directive of the court. Contrary to the court's directive not to release an evaluation report, on August 21, 2003 the respondent advised the court that he provided his next witness with a copy of the evaluation report and the witness was reading the report.

Charge 21 alleges that the respondent engaged in conduct prejudicial to the administration of justice and/or conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and/or (7) (22 NYCRR 1200.3 [a] [5], [7]), by failing to comply with a directive of the court regarding the submission of letters to the court and the making of disparaging remarks.

Charge 22 alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by entering into a retainer agreement dated April 8, 2003 with Ms. Shockome which failed to comply with the requirements set forth in 22 NYCRR 1400.3 (1), (5), (7), (9), (10), (11) and/or (12).

Charge 24 alleges that the respondent engaged in conduct prejudicial to the administration of justice and/or conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (5) and/or (7) (22 NYCRR 1200.3 [a] [5], [7]), by submitting a motion to a court containing unsupported statements made without reasonable inquiry into the accuracy of those statements. The respondent submitted to the court an order to show cause dated February 10, 2003 seeking, inter alia, to have the court recuse itself, in which he stated:

"Clearly something is wrong with the system in Dutchess. Already I have seen both the court and the evaluators relied upon by the court, to provide decisions based on popular misconceptions of domestic violence instead of the expertise that is needed . . . That there is no reason that Dutchess County has to remain on the side of the abusers."

The respondent offered to help fix the system "so we don't put other victims of domestic violence at such a disadvantage."

Prior to making these statements, the respondent had appeared before Judge Amodeo on only one occasion, had rarely appeared in the courts of Dutchess County, and knew little about the courts in that county. The respondent provided no documentation to support his statements.

Based on the respondent's admissions and the evidence adduced at the hearing, we find that all charges are sustained, with the exception of charge 10 (statement No. vii), charge 11 (statement No. vii), and charge 23.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider, with respect to the escrow violations, that they were "technical errors," that "he was just an honest attorney attempting to help others," and that he has since corrected his ways. The respondent's witnesses testified to his reputation for cooperation, honesty, and sincerity.

While the respondent contends, with regard to the charges relating to the *Shockome* matter, that these disciplinary proceedings were brought by the Grievance Committee in retaliation and as a penalty for his criticism of Judge Amodeo and the courts, we find no basis for such a contention. To the contrary, we find the respondent's utter failure to appreciate the fact that his conduct exceeded the bounds of propriety as a courtroom advocate, his complete lack of remorse, and the pervasive nature of his deceptive conduct to be aggravating factors. Irrespective of the respondent's sincerity in his beliefs, his overzealous behavior which took the form of disparaging remarks on the court, false accusations about Judge Amodeo disseminated in a public forum as part of a campaign to pressure the court into changing its rulings, and noncompliance with multiple court orders, truly constituted conduct prejudicial to the administration of justice.

The respondent has no prior disciplinary history.

Under the totality of circumstances, the respondent is suspended from the practice of law for a period of five years.

PRUDENTI, P.J., MASTRO, RIVERA, SKELOS and LIFSON, JJ., concur.

Ordered that the petitioner's motion to confirm in part and disaffirm in part the Special Referee's report is granted to the extent that all charges are sustained, with the exception of charge 10 (statement No. vii), charge 11 (statement No. vii), and charge 23, and the motion is otherwise denied; and it is further,

Ordered that the respondent, Barry L. Goldstein, is suspended from the practice of law for a period of five years, commencing January 30, 2009, and continuing until further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years upon furnishing satisfactory proof that during the said period he (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c); and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Barry L. Goldstein is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Barry L. Goldstein, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).